BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)
JENNIFER L. MACPHERSON (202021)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com
jmacpherson@bholaw.com

BEASLEY, ALLEN, CROW,
  METHVIN, PORTIS & MILES, P.C.
W. DANIEL "DEE" MILES, III (*pro hac vice forthcoming*)
H. CLAY BARNETT, III (*pro hac vice forthcoming*)
J. MITCH WILLIAMS (*pro hac vice forthcoming*)
DYLAN T. MARTIN (*pro hac vice forthcoming*)
TRENT H. MANN (*pro hac vice forthcoming*)
272 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
dee.miles@beasleyallen.com
clay.barnett@beasleyAllen.com
mitch.williams@beasleyallen.com
trent.mann@beasleyallen.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATT CAULLER, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>MAZDA MOTOR OF AMERICA, INC. D/B/A MAZDA NORTH AMERICAN OPERATIONS, MAZDA MOTOR CORPORATION,<br><br>   Defendants. | Case No. 8:24-cv-1807<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

*(vertical left margin text)* BLOOD HURST & O' REARDON, LLP

Plaintiff Matt Cauller ("Plaintiff") files this Class Action Complaint on behalf of himself and all others similarly situated against defendant Mazda Motor of America, Inc. ("MMA") and Mazda Motor Corporation ("MMC") (MMA and MMC together are "Mazda"). Based on personal knowledge as to matters relating to himself, and on information and belief based on the investigation of counsel, including counsels' review of consumer complaints available on the database of the National Highway Traffic Safety Administration ("NHTSA") and other publicly available information, as to all other matters, Plaintiff alleges as follows:

## I.    NATURE OF THE ACTION

1.    This class action lawsuit seeks redress for the misconduct of Mazda, an international manufacturer of automobiles that claims to manufacture and sell high-quality, safe vehicles, that knowingly exposed the purchasers and lessees of at least hundreds of thousands of Mazda vehicles, such as Plaintiff and members of the proposed class ("Class Members"), to a dangerous defect lurking in their vehicles' engine.  Despite being aware of this problem for years, Mazda failed to disclose it to Plaintiff and the members of the proposed class.

2.    Specifically, the SKYACTIV-G 2.5T engines in certain 2018-2021 Mazda6, 2021-2024 Mazda3 and CX-30, 2016-2023 CX-9, 2019-2024 CX-5, and 2022-2024 CX-50 vehicles ("Class Vehicles") are defective because of a lack of structural integrity of a joint between the engine blocks around the cylinder heads and exhaust manifold (the "Engine Defect" or "Defect").

3.    The Engine Defect leads to engine coolant leakage. Loss of coolant causes the engine to overheat and catastrophic engine failure. The Engine Defect also allows engine coolant to leak into the engine's cylinders, damaging the cylinders.

4.    Coolant is critical to the proper functioning of an engine. It's loss can lead to catastrophic engine failure from overheating even in vehicles with low mileage. It can result in the cylinder head cracking, sudden stalling, total engine failure, and engine fires. Coolant leaking into the engine's cylinders leads to

Blood Hurst & O' Reardon, LLP

CLASS ACTION COMPLAINT

corrosion, oil dilution and contamination, the loss of power as the seal in the combustion chamber diminishes, and engine failure.

5.      Mazda admits the existence of the Engine Defect in a series of Technical Service Bulletins ("TSBs"), but has not warned its customers, extended the vehicle warranty, or issued a recall.

6.      The Engine Defect is dangerous. A vehicle that stalls or experiences a sudden engine failure is at heightened risk for collision. A vehicle that stalls or suffers engine shutdown causes drivers to react to remove themselves from danger, typically by exiting the road. Drivers stranded on the side of the road are at a heightened risk of danger from other vehicles, remoteness, or weather elements.

7.      The Defect is the result of: (1) a supplier manufacturing defect in the engine block or head gasket; (2) the use of substandard materials in the manufacture of the engine such that it cannot maintain adequate pressure; (3) a defective design of the engine; and (4) poor quality control procedures to ensure such defectively manufactured and/or designed components are timely identified so they are not installed in the Class Vehicles.

8.      As further detailed in Section IV, Mazda's markets the Class Vehicles as safe and dependable, even though it suffers from a defect that is not found in other vehicles. Because of the Engine Defect, Mazda's advertising about the safety and dependability of the Class Vehicles is untrue and materially misleading.

9.      Plaintiff and other Class Members have been damaged as a result of Mazda's acts and omissions alleged herein.

10.     Mazda has long known of the Engine Defect. It has amassed years of research, data, and Engine Defect warranty claims. Moreover, under the TREAD Act, 49 U.S.C. § 30118, Mazda is duty-bound to, and does, monitor complaints from consumers that are posted on NHTSA's website. As set forth in Section IV below, there were numerous consumer complaints on NHTSA's website about the Engine Defect in Mazda's vehicles.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00217192

11.    Mazda refuses to repair Class Members' vehicles unless the Class member pays for the repair. The cost of repair is often $10,000 or more. Further, many repairs do not include damage other components (such as the turbo), which, given the cumulative harmful effects of the Defect, shortens the expected life of the vehicle even when repairs are made before complete engine failure.

12.    Plaintiff brings this lawsuit on behalf of himself, and all others similarly situated who own or lease a Class Vehicle equipped with a defective engine, and assert claims for breach of express warranty, breach of implied warranty, strict liability, negligent undertaking, and fraudulent omission.

## II.    JURISDICTION AND VENUE

13.    Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(a) and (d), because Plaintiff and Class Members are citizens of a state different than Defendant's home states, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial portion of actions giving rise to these claims occurred in this District, Mazda caused harm to Plaintiff in this District, and Mazda is a resident of this District under 28 U.S.C. § 1391(c)(2) because it is subject to personal jurisdiction in this District. Venue is also proper in this District pursuant to 18 U.S.C. § 1965.

15.    This Court has personal jurisdiction of Mazda because Mazda's principal place of business is in California, among other things.

## III.    THE PARTIES

### Plaintiff

16.    Plaintiff Matthew Cauller is a citizen of South Carolina and resides in Charleston, South Carolina.

17.    Plaintiff Cauller owns a 2017 Mazda CX-9 which he purchased new from Stokes Mazda in North Charleston, South Carolina on June 30, 2017.

BLOOD HURST & O' REARDON, LLP

00217192

18.    Prior to purchasing his Mazda CX-9, Plaintiff Cauller reviewed and relied on Mazda's promotional materials touting its safety and reliability, such as, Mazda's television advertisements, the Monroney sticker, and sales brochures, and interacted with at least one sales representative without Mazda disclosing the Engine Defect.

19.    Through his exposure and interaction with Mazda, Plaintiff Cauller received the safety and dependability marketing message Mazda conveyed through its and pervasive marketing. This promise of safety and dependability was material to his decision to purchase his Class Vehicle. When he purchased the vehicle, he believed, based on Mazda's marketing message, that the vehicle was safe and dependable vehicle, one that is safer than a vehicle that is not marketed as safe and dependable. At no point before Plaintiff Cauller purchased his vehicle did Mazda disclose to him that his vehicle was not safe or dependable, or that it was equipped with a defective engine.

20.    In June of 2023, Plaintiff's vehicle suffered catastrophic engine failure as a direct result of the Engine Defect. Due to the resulting engine damage, Plaintiff was forced to pay out-of-pocket expenses of approximately $8,000 to repair the engine. Plaintiff's mileage at the time of failure was 58,323. The repair was performed by Stokes Mazda, a certified Mazda dealership in North Charleston, South Carolina.

21.    The Engine Defect creates a dangerous condition that gives rise to a clear, substantial, and unreasonable danger of death or personal injury to Plaintiff Cauller, other occupants in his Class Vehicle, and others on the road. At no time did Mazda inform Plaintiff Cauller of the seriousness of the Engine Defect or recommend that he discontinue use of his vehicle.

22.    Plaintiff Cauller purchased his Class Vehicle with the Engine Defect as part of a transaction in which Mazda did not disclose material facts related to the automobile's essential purpose – safe and dependable transportation. Plaintiff Cauller did not receive the benefit of his bargain. He purchased a vehicle that is of a lesser

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Engine Defect has significantly diminished the value of Plaintiff Cauller's Class Vehicle.

23. Had Mazda disclosed the Engine Defect, Plaintiff Cauller would not have purchased his Class Vehicle, or would have paid less to do so.

24. Plaintiff Cauller would purchase a Mazda from Mazda in the future if Defendant's representations about the vehicle, including its safety and durability, were accurate.

***Defendant***

25. Defendant Mazda Motor Corporation ("MMC") is a Japanese corporation with its principal place of business in Fuchu, Aki District, Hiroshima Prefecture, Japan, and the parent company of Mazda Motor of America, Inc. ("MMA"). MMC has substantial control over MMA, and MMA acts for the benefit of MMC.

26. At all relevant times, MMC acted in the United States by itself and through MMA and its various entities including in this District. MMC, itself and through MMA and its various entities, is in the business of designing, engineering, testing, validating, manufacturing, marketing, and selling Mazda branded vehicles throughout the United States, including within this District.

27. Defendant MMA is incorporated in California with its principal place of business in Irvine, California.

28. MMA is a holding company of sales, manufacturing, engineering, and research and development strategies of MMC in the United States and is wholly owned by MMC. MMA is in the business of designing, engineering, testing, validating, manufacturing, distributing, marketing, selling, and servicing Mazda branded vehicles in the United States, including within this District.

BLOOD HURST & O' REARDON, LLP

Cases No. 8:24-cv-1807

CLASS ACTION COMPLAINT

29.     MMA, through its various entities, designs, manufactures, markets, distributes and sells Mazda automobiles through its hundreds of dealerships in the United States, including within this District.

## IV.    FACTUAL ALLEGATIONS

30.     Mazda manufactures, markets, and sells vehicles all over the United States, including South Carolina and California.

31.     Mazda has branded itself as the maker of safe and dependable vehicles and has spent millions of dollars on extensive marketing and advertising campaigns to cement the association of safety and reliability with its Mazda brand, including the Class Vehicles.

32.     Mazda designed, engineered, tested, validated, manufactured and placed in the stream of commerce Class Vehicles equipped with defective engines, thereby subjecting Plaintiff and Class Members to an unreasonable risk of death or injury, and damaging Plaintiff and Class Members as further detailed below. Nonetheless, Mazda marketed and sold the Class Vehicles, and has, at all times, uniformly branded the Class Vehicles as safe and dependable.

33.     Mazda developed the first SKYACTIV engine prior to 2010, with the engine first appearing in Mazda vehicles in the 2011 model year. The SKYACTIVG models of the engine was first seen in prototype testing in the latter half of 2010.

34.     This family of engines are direct injection internal combustion engines, meaning that the fuel, or gas, is directly inserted into the engine's combustion chambers with high pressure (i.e., atomized into a fine mist). As it is injected, the fuel is mixed with compressed air and ignited by the spark plug. The force generated by the combustion is transferred via the crankshaft to the rest of the vehicle, including the axles. Each cylinder of an engine is its own small combustion chamber, separate from the other cylinders. All internal combustion engines require the combustion chambers to be properly sealed, to both ensure that the force of the combustion does

not leak out, leading to a waste of power, and to prevent unwanted materials from getting inside the combustion chambers.

35.    In the Class Vehicle engines, as with nearly all internal combustion engines, the combustion chambers are topped with a cylinder head. The engine block, which houses the lower part of the cylinders, is first fitted with a gasket, called the head gasket, and then the cylinder head is seated on that gasket and bolted into place to provide an air-tight seal. The cylinder head, in addition to sealing the combustion chambers, also houses other critical parts of an engine, including the intake and exhaust valves, the spark plugs, and coolant passages.

36.    Such engines naturally generate large amounts of heat as a result of the combustion reaction, as well as from the friction of moving parts like the piston, in addition to force. While engine oil is used to lubricate the moving parts to reduce friction, internal combustion engines are also dependent on cooling systems with circulating coolant to prevent the engine and its components from getting too hot.

37.    When engines get too hot, the engine blocks, cylinder heads, and other components can warp out of shape, reducing power, causing engine failure, and causing the engine to burst into flame. As a result, a cooling system, which circulates coolant through the engine block and cylinder head via coolant passages, is necessary to counteract the heat produced by the combustion reaction.

38.    A properly functioning cooling system is especially critical in the SKYACTIV-G 2.5T. Unlike other turbo-charged engines, "Mazda developed a cooled exhaust gas recirculation (EGR) system that the engine could run at a high 10.5:1 compression ratio without needing to dump fuel into its cylinders for cooling, commonly known as enrichment."[1] This module cools exhaust gas that recirculates, thus reducing internal heat and prevent damage to the engine. This EGR system takes

---

[1]    *See*    https://news.mazdausa.com/2016-12-12-mazdas-turbocharged-skyactiv-engine-wins-2017-wards-10-best-engines-award

BLOOD HURST & O' REARDON, LLP

00217192

the exhaust fumes collected by the exhaust manifold and cools the gases before directing them towards the turbocharger.

39.    The Defect causes engine coolant leakage which results in the engine overheating and catastrophic engine failure.

40.    The Defect can also cause coolant to enter the combustion chamber in sufficient quantities to cause "hydrolock," in which fluid stops the pistons from achieving the correct air compression.

41.    Coolant also mixes the fuel and air, which would otherwise be burned during the combustion process.

42.    A loss of coolant, whether into the combustion chamber or not, will eventually cause the engine to overheat as the cooling system cannot function properly without sufficient coolant.

43.    Additionally, when coolant does enter the combustion chamber, consumers may see white smoke from the exhaust, a product of burned coolant; experience engine misfires, rough idling, and poor fuel and engine performance as the combustion process is disrupted; and damage the engine, including the pistons, piston rings and cylinders.

44.    Compounding the problem, the Engine Defect occurs spontaneously with no advance warning to the consumer, thereby creating an extremely dangerous condition for drivers, including those on the road who may be left helpless and unable to take action to get out of the way of oncoming traffic or reach safety.

45.    Class Members' complaints set forth below exemplify the real-world dangers caused by the Engine Defect.

46.    Vehicle manufacturers like Mazda monitor NHTSA and other databases for consumer complaints as part of their ongoing obligation to uncover and report potential safety-related defects. Accordingly, Mazda knew, or should have known, based on the many complaints lodged with NHTSA and elsewhere, about the specific safety hazard that is the subject of the Recalls.

BLOOD HURST & O' REARDON, LLP

47.    By way of example, the consumer complaints set forth below demonstrate the seriousness of the Engine Defect. These consumer complaints represent a small fraction of the hundreds of similar complaints submitted to NHTSA by owners and lessees of the Class Vehicles regarding the Engine Defect.[2]

WHEN TAKING VEHICLE IN FOR RECOMMENDED 45K MILE SERVICE, DEALER DISCOVERED WARPED HEAD CYLINDER AND LEAKING OIL. NO CHECK ENGINE LIGHT WARNING EVER CAME ON! NO WARNING. MAZDA IS REPLACING ENGINE PARTS UNDER VEHICLE WARRANTY. (NHTSA ID: 11402855; Complaint date: 3/13/2021)

Cylinder head cracked, leaking coolant and causing engine overheated, potential fire hazard. Coolant also leaked and mixed in with oil cycling through engine, causing permanent damage to the engine, resulting engine to be fully replaced. (NHTSA ID: 11464797 Complaint date: 5/16/2022)

Cracked Cylinder Head due to Coolant Leak - SB 01-013/21.  This is a known issue with Mazda, yet it has happened with the vehicle being serviced regularly. This is happens directly after the warranty period and it is not being covered. (NHTSA ID: 11493746; Complaint date: 11/16/2022)

I am being told by the dealership service center that there is a coolant leak from the engine. A previous coolant look due to a hose was repaired but this is a separate issue related to the TSB for coolant leak at the cylinder head Bulletin 01-007/22. (NHTSA ID: 11498304; Complaint date: 12/20/2022)

Car overheated. check front engine and could not see any visible leaks. check all around the engine and found coolant leaking from the back of the engine. confirm by dealer that is leaking at the cylinder head. (NHTSA ID: 11499498; Complaint date: 12/30/2023)

Cracked cylinder head, significant oil leaking, no engine lights. No past collisions in vehicles or indicator engine was running hot.

---

[2]    All consumer reports included in this complaint are verbatim as they were originally submitted to NHTSA.

Cases No. 8:24-cv-1807

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00217192

Dealership reported they see no history of fault codes on vehicle computer. (NHTSA ID: 11499627; Complaint date: 12/31/2022)

Head gasket blew in a 2016 Mazda CX9 while driving causing us to as safely as possible quickly get off the road from the middle lane of an interstate. This is from a known coolant leak in the cylinder head from service bulletin 01-013/21. (NHTSA ID: 11507815; Complaint date: 2/17/2023)

The coolant was leaking due to a crack in cylinder. The car overheated and the coolant leaked into the engine. Mazda refuses to identify this as an ongoing issue with the Mazda turbo skyactiv models. (NHTSA ID: 11508779; Complaint date: 2/2/2023)

Coolant leak into cylinder head, resulting in overheating and blown head gasket. Repair cost was $7k to resurface cylinder head and replace gasket. Repair did not fix issue, likely due to unseen cracks or warping to cylinder head. Will require rework. (NHTSA ID: 11511374; Complaint date: 3/11/2023)

The contact owns a 2018 Mazda Mazda3. The contact stated that while driving at an undisclosed speed, there was an abnormal sound coming from the engine. The contact stated while starting the vehicle, the abnormal sound would increase. The contact took the vehicle to an independent mechanic who listened to the engine and ended up removing pistons from the engine. The mechanic discovered there was an abnormal sound in cylinder #3 which caused the mechanic to remove the spark plugs. The contact linked the failure to NHTSA Campaign Number: 17V745000 (Engine and Engine Cooling). The vehicle was not repaired. The manufacturer was not made aware of the failure. The failure mileage was approximately 118,000. (NHTSA ID: 11587678; Complaint date: 5/8/2024)

I noticed oil was leaking and my engine was steaming after driving. My mechanic found a crack in a cylinder after watching YouTube and finding out Mazda has this issue. (NHTSA ID: 11580786; Complaint date: 4/2/2024)

Cracked cylinder head, significant oil leaking, no engine lights. No past collisions in vehicles or indicator engine was running hot.

BLOOD HURST & O' REARDON, LLP

Dealership reported they see no history of fault codes on vehicle computer. (NHTSA ID: 11499627; Complaint date: 12/31/2022)

I took my vehicle into the dealership service center to have maintenance and repairs done. I notified them to a coolant leak. They discovered that the engine has a cracked cylinder head and that the manufacturer is aware of the defect. They stated that they have new updated parts they will use for the repair so this will not happen again. At this time there is no Mazda warranty extension or recall that covers the cost of the repair. (NHTSA ID: 11591901; Complaint date: 6/1/2024)

I BOUGHT MY 2017 MAZDA 6 BRAND NEW. WHILE THE CAR WAS IN WARRANTY IN JANUARY 2020 WHILE I WAS DRIVING WITH 50 MILES IN HOUR, THE ENGINE WAS RUNNING ROUGH, THE ENGINE LIGHT WAS ON AND THE ENGINE STALL. THE CAR WAS TOWED BY MAZDA AT DEALER. THEY REPLACED THE FUEL PUMP AT THAT TIME. FEW DAYS AGO WHILE I WAS DRIVING WITH 35 MILES IN HOUR THE CAR DID THE SAME THING. MAZDA TOWED THE CAR TO ANOTHER DEALER. AFTER DIAGNOSIS THEY TOLD ME THAT IS NOTHING WRONG WITH THE CAR AND THE CAR IS NOT UNDER THE WARRANTY ANYMOORE. I TOLD THEM THAT THE ENGINE LIGHT WAS ON AND SOMETHING MUST BE WRONG. THEY DIDN'T RESPOND. THE CAR HAS 24,000 MILES AND I AM AFRAID TO DRIVE IT ANYMORE. (NHTSA ID: 11396179; Complaint date: 2/14/2021)

At less than 95,000 miles, the car suddenly started overheating. Coolant level was fine, maybe ever so slightly low (could still see the coolant in tubing and some in reservoir, which was closer to low than full). Replaced ECT sensor, thermostat and water pump which seemed to fix the issue. Drove for 9-10 days with no issues and it started overheating again. I was able to park quickly afterward at work (<10 seconds). Schedule for drop off at dealer (if car didn't show signs of overheating first (would have called tow truck). Checked fluid levels in car (was ~1Qt low) and topped it off. Drove to dealer (~30min ride) with no issues whatsoever. When dealer looked at it, they said cylinder was warped and leaking, requiring new engine. A just paid off car, with less than 100k miles on it, now needs a new engine that will cost

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00217192

BLOOD HURST & O' REARDON, LLP

more than half of what it's worth. (NHTSA ID: 11600610; Complaint date: 7/9/2024)

48.    As demonstrated above, Class Vehicles suffer from a uniform defect that causes the engine to malfunction and fail prematurely. Compounding the issue, drivers often are not protected from these safety risks by a warning prior to engine failure. The above complaints are mere examples of the ones lodged with NHTSA regarding the Engine Defect. All the complaints above experienced symptoms associated with the Engine Defect.

49.    As demonstrated, the Engine Defect creates an unreasonable risk of injury or death to Plaintiff, Class Members, and others.

50.    The Engine Defect causes Class Vehicles to become dangerous and inoperable while on the road and therefore they are not fit for their ordinary purpose.

### D.    DEFENDANTS' PRESALE KNOWLEDGE OF THE ENGINE DEFECT

51.    Mazda knew, should have known, or were reckless in not knowing about the Engine Defect, but concealed or failed to disclose the defect and continued to manufacture, market, and sell its popular Class Vehicles.  Specifically, Mazda knew, should have known, or was reckless in not knowing the defective engines in the Class Vehicles exposed Class Members to extreme danger and, in order to render them safe, the Class Vehicles needed new or enhanced engine that functioned safely and as intended. Nonetheless, Mazda failed to take corrective action.

52.    In fact, Mazda knew, should have known, or was reckless in not knowing about the Engine Defect since the pre-release process of designing, manufacturing, engineering, and testing the Class Vehicles. Specifically, Mazda conducts rigorous pre-production testing and validation.[3] Mazda conducts various pre-release testing, such as production part approval process ("PPAP") testing and failure mode and

---

[3]    http://suppliers.mazdausa.com/Library/Quality_Control_Standard_For_Suppliers.pdf?bcs-agent-scanner=a38b7f22-f5b0-3443-829f-9a9ba5195bd0

effects analysis ("FMEA") testing. During these phases, Mazda would have gained comprehensive and exclusive knowledge about the engines, particularly the basic engineering principles behind the construction and function of the engines such as the block design. However, Mazda failed to act on that knowledge and instead installed the defective engines in the Class Vehicles, and Mazda subsequently marketed and sold the vehicles to unsuspecting consumers without disclosing the safety risk or warning Class Members.

53.    Further, as set forth above, the TREAD Act requires automakers like Mazda to be in close contact with NHTSA regarding potential defects, and therefore Mazda should (and does) monitor NHTSA databases for consumer complaints regarding their automobiles. From its monitoring of the NHTSA databases, Mazda knew or should have known of the many Engine Defect complaints lodged as early as 2015, such as those quoted above. However, Mazda failed to act on that knowledge by taking action, including recalling the vehicles with the Engine Defect.

54.    Despite Mazda's extensive knowledge, Mazda failed to act on that knowledge by warning Class Members. Sacrificing consumer safety for profits, Mazda instead chose to enrich itself by using false and misleading marketing to sell the Class Vehicles as safe and durable at inflated prices.

55.    Mazda, at all material times, regularly held internal meetings regarding product quality and trends. Through these regular discussions, Mazda knew, should have known, or was reckless in not knowing about the Engine Defect.

56.    Despite Mazda's extensive knowledge, it failed to act on that knowledge by warning Class Members. Sacrificing consumer safety for profits, Mazda instead chose to enrich itself by using false and misleading marketing to sell the Class Vehicles as safe and durable at inflated prices.

BLOOD HURST & O' REARDON, LLP

**E.    MAZDA CONTINUOUSLY TOUTED CLASS VEHICLES AS
SAFE AND DEPENDABLE, CONCEALING THE ENGINE
DEFECT**

57.    Mazda's overarching marketing message for the Class Vehicles was and is that the vehicles are safe and dependable and that their engines can be relied on to perform well. This marketing message is false, and misleading given the propensity of the engines in the Class Vehicles to fail, causing the vehicles to become inoperable which, as Mazda admits, creates an unreasonable risk of a crash.

58.    For example, Mazda dedicates a page on its website entitled "safety," where Mazda touts the safety of its vehicles, as the screenshots below indicate:[4]



59.    Mazda employed and continues to employ a long term and uniform marketing message that its vehicles are of the utmost safety and dependability.

60.    Despite Mazda's knowledge and uniform and pervasive marketing message of safety and dependability, nowhere does Mazda disclose the Engine Defect or the unreasonable risk to safety it poses.

61.    A car with a defective engine that can cause the vehicle to suffer catastrophic damage, and thereby expose occupants to an unreasonable risk of injury or death *is not a safe car*. Thus, Mazda's marketing of the Class Vehicles as safe and

---

[4]    https://www.mazda.com/en/innovation/safety/

BLOOD HURST & O' REARDON, LLP

00217192

dependable is false and misleading and omits facts that would be material to consumers such as Class Members who purchased or leased Class Vehicles because they were consistently marketed as having the utmost safety on the road.

62.    Mazda marketed the Class Vehicles as safe and dependable, but failed to disclose the existence, impact, and danger of the Engine Defect, despite its knowledge. Specifically, Mazda:

a.    Failed to disclose, at and after the time of purchase, lease, service, or thereafter, any and all known material defects of the Class Vehicles, including the Engine Defect, despite its knowledge;

b.    Failed to disclose, at and after the time of purchase, lease, service, or thereafter, that the Class Vehicles' engines were defective and not fit for their ordinary purpose, despite its knowledge; and

c.    Failed to disclose and actively concealed the existence and pervasiveness of the Engine Defect, despite its knowledge.

63.    Mazda's deceptive marketing and willful and knowing failure to disclose the Engine Defect damaged, and continues to damage, Plaintiff and Class Members. If Plaintiff and Class Members had known of the Engine Defect and/or that the Class Vehicles were not safe and durable, they would not have purchased or leased the Class Vehicles or certainly would have paid less to do so.

64.    Mazda marketed the Class Vehicles as safe, dependable, and made of high-quality materials and innovation, but failed to disclose the existence, impact and danger of the Engine Defect and/or that the Class Vehicles were not safe or dependable. Specifically, Defendant:

a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Engine Defect, despite its knowledge;

Cases No. 8:24-cv-1807

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

b.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' Engine were defective and not fit for their ordinary purpose, despite its knowledge; and

c.    Failed to disclose and actively concealed the existence and pervasiveness of the Engine Defect, despite its knowledge.

65.    Mazda's deceptive marketing and willful and knowing failure to disclose the Engine Defect damaged, and continues to damage, Plaintiff and Class Members. If Plaintiff and Class Members had known of the Engine Defect and/or that the Class Vehicles were not safe and durable, they would not have purchased or leased the Class Vehicles or certainly would have paid less to do so.

**F.    MAZDA ISSUED INADEQUATE REMEDIES**

66.    Between October 15, 2021, and January 19, 2023, Mazda issued a series of TSBs for deformation of the exhaust manifold causing unexpected force to certain areas of the cylinder head, admitting the Engine Defect. *See* Exs. A-F.

67.    Mazda attributed the deformation and subsequent cracking to residual stress generated during production in the cylinder heat material being greater than expected. Mazda went on to state that the external force from the exhaust system when driving over bumps may cause unexpected force to certain areas of the cylinder head.

68.    As a repair, Mazda instructed its dealers to replace the cylinder head assembly with a new one using a modified exhaust gasket.

69.    Despite the replacement of the cylinder head assembly with a new one using a modified exhaust gasket, Mazda continued to receive warranty claims for the Engine Defect.

70.    On February 3, 2023, Mazda issued its fifth TSB for the Engine Defect. This time attributing the defect to the variable valve in the exhaust manifold seizing and causing the exhaust port to become hot and the exhaust valve seat to wear unevenly, resulting in compression leakage.

BLOOD HURST & O' REARDON, LLP

71.    As a repair, Mazda instructed its dealers to replace the cylinder head with the worn valve seats and the exhaust manifold with the seized variable valve.

72.    Again, Mazda's purported remedies proved to be ineffective as Mazda continued to receive warranty claims for the Engine Defect.

73.    On February 10, 2023, Mazda issued its latest TSB. This time, attributing the Engine Defect to expansion characteristics of the exhaust manifold during usage, causing unexpected force to certain areas of the cylinder head. Mazda went on to state that residual stress generated during production in the cylinder head material was greater than expected and that the external force from the exhaust system when driving over bumps was causing unexpected force to certain areas of the cylinder head.

74.    As a repair, Mazda instructed its dealers to replace the cylinder head assembly with a new one using a modified exhaust manifold gasket.

75.    None of the above repairs proved to be adequate remedies.

**G.    APPLICABLE WARRANTIES**

76.    Mazda sold and leased the Class Vehicles with written express warranties.

77.    Mazda offered a written express basic warranty covering Mazda brand vehicles for 36 months or 36,000 miles covering all components (except normal wear and tear).[5] Mazda also offered a 60 month or 60,000-mile powertrain warranty, which covers the engine.[6]

78.    Mazda provides these warranties to buyers and lessees after the purchase/lease of the Class Vehicles is completed; buyers and lessees have no pre-sale/lease knowledge or ability to bargain as to the terms of the warranties.

---

[5]    https://www.mazdausa.com/owners/warranty (last visited August 15, 2024).
[6]    *Id.*

BLOOD HURST & O' REARDON, LLP

00217192

79.    However, Class Members complained to dealers about the Engine Defect but did not receive an adequate repair, breaching the express and implied warranties provided by Mazda.

### H.    MAZDA HAD NOTICE OF THE DEFECT THROUGHOUT THE RELEVANT PERIOD

80.    As alleged herein, the Engine Defect is a serious safety defect that Mazda has failed to repair, thus rendering the satisfaction of notice requirement futile.

81.    In addition to other forms of notice alleged herein, Mazda has notice of the Engine Defect by way of the numerous complaints filed against it directly and through its dealers, as well as complaints submitted to NHTSA and other fora, which, upon information and belief, it monitors. Mazda also has notice of the Engine Defect from the thousands of warranty claims it admitted to receiving in relation to the Engine Defect.

82.    Moreover, as alleged in more detail herein, Mazda had notice when Plaintiff presented his vehicle to Mazda for repair.

83.    Finally, considering the allegations Plaintiff sets forth herein and Mazda's inability to remedy the Engine Defect, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the Class Members resort to an informal dispute resolution procedure and/or afford Mazda a reasonable opportunity to cure its breach of warranties (when it is currently unable to do so) is excused and thus deemed satisfied.

## V.    FRAUDULENT OMISSION/CONCEALMENT ALLEGATIONS

84.    Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Mazda responsible for making false and misleading statements regarding the Class Vehicles. Mazda necessarily is in possession of all of this information. Plaintiff's claims arise out of Defendant's fraudulent omission/concealment of the Engine Defect, despite their representations about the quality, safety, and comfort of the Class Vehicles.

19

Cases No. 8:24-cv-1807

85.    Plaintiff alleges that at all relevant times, including specifically at the time he and Class Members purchased their Class Vehicle, Mazda knew, or was reckless in not knowing, of the Engine Defect; Mazda had a duty to disclose the Engine Defect based upon their exclusive knowledge; and Mazda never disclosed the Engine Defect to Plaintiff or the public at any time or place in any manner.

86.    Plaintiff makes the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendant:

    a.   **Who:** Defendant actively concealed and omitted the Engine Defect from Plaintiff and Class Members while simultaneously touting the safety and dependability of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Mazda responsible for such decisions.

    b.   **What:** Defendant knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Engine Defect, as alleged herein. Defendant concealed and omitted the Engine Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

    c.   **When:** Defendant concealed and omitted material information regarding the Engine Defect at all times while making representations about the safety and dependability of the Class Vehicles on an ongoing basis, and continuing to this day, as alleged herein. Defendant still has not disclosed the truth about the full scope of the Engine Defect in the Class Vehicles to anyone outside of their respective entities. Defendant has never taken any action to inform consumers about the true nature of the Engine

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00217192

Defect in Class Vehicles. And when consumers brought their vehicles to Mazda complaining of the engine failures, Mazda denied any knowledge of or repair for the engine Defect.

d. **Where:** Defendant concealed and omitted material information regarding the true nature of the Engine Defect in every communication they had with Plaintiff and Class Members and made representations about the quality, safety, and comfort of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Engine Defect in the Class Vehicles to anyone outside of its own entity. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendant's websites.  There are channels through which Defendant could have disclosed the Engine Defect, including but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists.

e. **How:** Defendant concealed and omitted the Engine Defect from Plaintiff and Class Members and made representations about the quality, safety, dependability, and comfort of the Class Vehicles. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Engine Defect from Plaintiff and Class Members at all times, even though it knew about the Engine Defect and knew that information about the Engine Defect would be important to a reasonable consumer, and Defendant promised in its marketing materials that Class Vehicles have qualities that it do not have.

CLASS ACTION COMPLAINT

f.    **Why:** Defendant actively concealed and omitted material information about the Engine Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, durability, and comfort of the Class Vehicles. Had Defendant disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## VI.    TOLLING OF STATUTE OF LIMITATIONS

### A.    Continuing Tolling Act

87.    Beginning in 2016, Mazda continuously marketed and sold Class Vehicles with defective engines to unsuspecting customers. Mazda continuously represented the Class Vehicles as safe and dependable despite their propensity to experience complete engine failure. By making these false representations and failing to disclose the existence of the Engine Defect in the Class Vehicles and thereby exposing occupants to risk of injury and death, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Mazda might seek to apply.

88.    Pursuant to the TREAD Act, 49 U.S.C. § 30118, automobile manufacturers are required to report information regarding customer complaints and warranty claims to NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects. Mazda owed a continuing duty to Plaintiff and Class Members to disclose any risks to life and limb that its products pose. It continually breached that duty.

BLOOD HURST & O' REARDON, LLP

89.     Mazda breached its duties to consumers by knowingly selling Class Vehicles with defective engines on an ongoing basis.

90.     Mazda's knowledge of the Engine Defect is evidenced by numerous NHTSA complaints by consumers, many of whom reported contacting Mazda directly about the defective engines. Other NHTSA complainants reported taking their vehicles to Mazda's dealers, who are agents of Mazda and, on information and belief, report consumer complaints back to Mazda.

91.     Thus, Mazda had continued knowledge of the Engine Defect and the dangers it posed yet continued to market and sell their products. Plaintiff's and other Class Members' claims are not time barred.

**B.     Fraudulent Concealment Tolling**

92.     Mazda had a duty to disclose to Plaintiff and the Class Members the true quality and nature of the Class Vehicles, that the Class Vehicles had a uniform defect; and that the Engine Defect requires repairs, poses a safety risk, and reduces the intrinsic and resale value of the affected vehicles.

93.     This duty arose, *inter alia*, under the TREAD Act, 49 U.S.C. § 30118.

94.     Mazda knew, or was reckless or negligent in not knowing, that the Class Vehicles contain the Engine Defect, as alleged herein. Mazda concealed and omitted the Engine Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

95.     Mazda knew, or were reckless or negligent in not knowing, that the Class Vehicles contain the Engine Defect, as alleged herein.

96.     Mazda concealed and omitted to disclose the Engine Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

97.     Despite its knowledge of the Engine Defect, Mazda failed to disclose and concealed this material information from Plaintiff and other Class Members, and instead continued to market the Class Vehicles as safe and durable.

BLOOD HURST & O' REARDON, LLP

98.    The purpose of Mazda's concealment of the Defective engine was to prevent Plaintiff and other Class Members from seeking redress.

99.    Plaintiff and the other Class Members justifiably relied on Mazda to disclose the existence of dangerous defects, including the Engine Defect, in the Class Vehicles that they purchased or leased, because that defect was not discoverable by Plaintiff and the other Class Members through reasonable efforts.

100.    Any applicable statute of limitations has been tolled by Mazda's knowledge, active concealment, and denial of the facts alleged herein, which behavior was ongoing.

**C.    Discovery Rule Tolling**

101.    Through the exercise of reasonable diligence, Plaintiff and other Class Members could not have discovered that Mazda was concealing and misrepresenting the existence of the Engine Defect, which is installed in the Class Vehicles, and the risks it posed.

102.    Plaintiff and the other Class Members could not have reasonably discovered and could not have known of facts that would have caused a reasonable person to suspect, that Mazda failed to disclose material information within their knowledge about a dangerous defect to consumers worldwide.

**VII.    CLASS ACTION ALLEGATIONS**

103.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated.

104.    Plaintiff seeks to represent a South Carolina statewide class (the "South Carolina Class" or "Class") defined as follows:

> All current and former owners and lessees of a Class Vehicle (as defined herein) that was purchased or leased in the State of South Carolina.

105.    Excluded from the Class is Mazda and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the

BLOOD HURST & O' REARDON, LLP

judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend definitions of the Class and to add additional classes and sub-classes, as appropriate, during the course of this litigation.

106.   This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

107.   **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believe that there are not less than at least approximately 200,000 members of the Class, the precise number of Class Vehicles is unknown to Plaintiff but may be ascertained from Mazda's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

108.   **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

      a.    whether Defendant engaged in the conduct alleged herein;

      b.    whether Defendant's alleged conduct violates applicable law;

      c.    whether Defendant designed, manufactured, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

      d.    whether Defendant made false or misleading statements about the quality, safety and characteristics of the Class Vehicles and/or the engines;

      e.    whether the Class Vehicles contain the Engine Defect;

f.    whether Defendant had actual or implied knowledge about the Engine Defect;

g.    whether Defendant failed to disclose the Engine Defect to Plaintiff and the other members of the Class;

h.    whether Defendant's omissions and concealment regarding the quality, safety and characteristics of the Class Vehicles and/or the engines were likely to deceive members of the Statewide Class in violation of the state consumer protection statutes alleged herein;

i.    whether Mazda breached its express warranties with respect to the Class Vehicles;

j.    whether Mazda breached its implied warranties with respect to the Class Vehicles;

k.    whether the members of the Class overpaid for their Class Vehicles as a result of the defect alleged herein;

l.    whether the members of the Class are entitled to damages, restitution, disgorgement, statutory damages, exemplary damages, equitable relief, and/or other relief; and

m.    the amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

109.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff and the members of the Class purchased or leased Class Vehicles that contain defective engines, as described herein. Neither Plaintiff nor the other members of the Class would have purchased the Class Vehicles or would not have paid as much as they did for the Class Vehicles, had they known of the Engine Defect. Plaintiff and the other members of the Class suffered damages as a direct proximate result of the same wrongful practices in which Mazda engaged. Plaintiff's claims arise from the

BLOOD HURST & O' REARDON, LLP

Cases No. 8:24-cv-1807

CLASS ACTION COMPLAINT

same practices and course of conduct that give rise to the claims of the other members of the Class.

110.  **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class that he seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, including automotive litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

111.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Statewide Class Members as a whole.

112.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the other members of the Class to individually seek redress for Defendant's wrongful conduct. Even if these Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device, as intended by Congress, presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

Blood Hurst & O' Reardon, LLP

VIII.    CLAIMS FOR RELIEF

A.    Claims Brought on Behalf of the South Carolina Class

### COUNT I

### VIOLATION OF THE SOUTH CAROLINA'S UNFAIR TRADE PRACTICES ACT
### S.C. Code Ann. § 39-5-10 *et seq.*

**(Individually and on behalf of the Statewide Class)**

113.    Plaintiff Cauller ("Plaintiff," for purposes of the South Carolina Class's claims) incorporates by reference each allegation as if fully set forth herein.

114.    Plaintiff brings this count individually and on behalf of all members of the South Carolina Class (the "Class," for purposes of this Count).

115.    Mazda, Plaintiff and other Class Members are a "person" under S.C. Code Ann. § 39-5-10(a).

116.    Mazda engaged in "trade" or "commerce" under S.C. Code Ann. § 39-5-10(b).

117.    The South Carolina Unfair Trade Practices Act ("SCUPTA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a). Mazda's conduct was unfair because it (1) offends public policy as it has been established by statutes, the common law, or otherwise; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. Mazda's conduct is deceptive because it has the capacity or tendency to deceive.

118.    In the course of its business, Mazda omitted and suppressed material facts concerning the Engine Defect. Mazda falsely represented the quality of the Class Vehicles and omitted material facts regarding the engine, as well as the safety, reliability, and overall value of the Class Vehicles, for the purpose of inducing Plaintiff and other South Carolina Class Members to purchase the Class Vehicles, and to increase Mazda's revenue and profits.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

119.   The facts omitted by Mazda were material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the Class Vehicles or pay a lower price. Had Plaintiff and other South Carolina Class Members known of the Engine Defect, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

120.   Plaintiff and the other Class Members were injured and suffered ascertainable loss, injury in fact, and/or actual damages as a proximate result of Mazda's conduct in that Plaintiff and the other Class Members overpaid for their Class Vehicles and did not get the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Mazda's misrepresentations, fraud, deceptive practices, and omissions. Mazda's violations present a continuing risk to Plaintiff as well as to the general public. Mazda's unlawful acts and practices complained of herein impact the public interest. Specifically: (1) the number of consumers affected by Mazda's deceptive practices are in the hundreds of thousands nation-wide; (2) Mazda has significantly high sophistication and bargaining power with respect to the manufacture and sale of the Class Vehicles to Plaintiff and individual Class Members; and (3) so long as the Class Vehicles continued to be sold and distributed, the likelihood of continued impact on other consumers is significant.

121.   Mazda are liable to Plaintiff and other Class Members for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages up to $25,000, as well as any other just and proper relief the Court may deem appropriate under S.C. Code Ann. § 39-5-140.

///

///

///

///

///

BLOOD HURST & O' REARDON, LLP

00217192

# COUNT II

## BREACH OF EXPRESS WARRANTY
### SC Code Ann. § 36-2-313
### (Individually and on behalf of the Statewide Class)

122. Plaintiff Cauller ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

123. Plaintiff brings this claim individually and on behalf of other members of the South Carolina Class (the "Class," for purposes of this Count).

124. Mazda is a merchant with respect to the Class Vehicles.

125. In its written express warranties, Mazda expressly warranted that it would repair or replace defective parts free of charge if the defects became apparent during the warranty period.

126. Mazda's written express warranties formed the basis of the bargain that was reached when Plaintiff and the other Class Members purchased or leased their Class Vehicles.

127. Mazda breached its express warranty to repair defective parts in the Class Vehicles. Mazda admittedly has not repaired the Class Vehicles' Engine Defect.

128. Mazda was provided with notice of the Engine Defect as alleged in detail herein. Mazda has not remedied its breach.

129. Further, Mazda has refused to provide an adequate and timely warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. Customers that have presented their vehicles for warranty repair due to engine failure have been denied adequate repairs.

130. The written express warranties fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class Members whole and because Mazda has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

131.   Accordingly, recovery by Plaintiff and the other Class Members is not limited to the limited remedy of repair, and Plaintiff, individually and on behalf of the other Class Members, seeks all remedies as allowed by law.

132.   Also, as alleged in more detail herein, at the time that Mazda warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and Mazda improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class Members were therefore induced to purchase or lease the Mazda Vehicles under false pretenses.

133.   The notice requirement is satisfied because Mazda has actual knowledge of the Defect, as alleged herein, and because Plaintiff presented his vehicle to the dealership.

134.   As a direct and proximate result of Mazda's breach of its express warranty, Plaintiff and the other Class Members have been damaged in an amount to be determined at trial.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### SC Code Ann. § 36-2-314

### (Individually and on behalf of the Statewide Class)

135.   Plaintiff Cauller ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

136.   Plaintiff brings this claim individually and on behalf of other members of the South Carolina Class (the "Class," for purposes of this Count).

137.   Mazda is a merchant with respect to motor vehicles under SC Code Ann. § 36-2-314.

138.   Pursuant to SC Code Ann. § 36-2-314, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

Cases No. 8:24-cv-1807

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00217192

139.   The Class Vehicles do not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Engine Defect which causes the Class Vehicles' engines to prematurely fail.

140.   Mazda was provided with notice of the Engine Defect as alleged in detail herein. Mazda has not remedied its breach.

141.   Further, Mazda has refused to provide an adequate and timely warranty repair for the Engine Defect, thus rendering the satisfaction of any notice requirement futile. As stated above, customers that have presented their vehicles for warranty repair due to Engine failure have been denied adequate repair.

142.   The notice requirement is satisfied because Mazda has actual knowledge of the Defect, as alleged herein, and because Plaintiff presented his vehicle to the dealership.

143.   Plaintiff and the other Class Members suffered injuries due to the defective nature of the Class Vehicles and Mazda's breach of the warranty of merchantability.

144.   As a direct and proximate result of Mazda's breach of the warranty of merchantability, Plaintiff and the other Class Members have been damaged in an amount to be proven at trial.

## COUNT IV

## FRAUDULENT OMISSION

### (Individually and on behalf of the Statewide Class)

145.   Plaintiff Cauller ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

146.   Plaintiff brings this claim individually and on behalf of other members of the South Carolina Class (the "Class," for purposes of this Count).

BLOOD HURST & O' REARDON, LLP

147.   Defendant was aware of the Engine Defect within the Class Vehicles when it marketed and sold the Class Vehicles to Plaintiff and the other members of the Class.

148.   Having been aware of the Engine Defect within the Class Vehicles and having known that Plaintiff and the other members of the Class could not have reasonably been expected to know of the Engine Defect, Defendant had a duty to disclose the defect to Plaintiff and the other members of the Class in connection with the sale or lease of the Class Vehicles.

149.   Defendant did not disclose the Engine Defect to Plaintiff and the other members of the Class in connection with the sale of the Class Vehicles.

150.   For the reasons set forth above, the Engine Defect within the Class Vehicles comprises material information with respect to the sale or lease of the Class Vehicles.

151.   In purchasing the Class Vehicles, Plaintiff and the other members of the Class reasonably relied on Defendant to disclose known material defects with respect to the Class Vehicles.

152.   Had Plaintiff and the other members of the Class known of the Engine Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

153.   Through its omissions regarding the Engine Defect within the Class Vehicles, Defendant intended to induce, and did induce, Plaintiff and the other members of the Class to purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

154.   As a direct and proximate result of Defendant's omissions, Plaintiff and the other members of the Class either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Engine Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

BLOOD HURST & O' REARDON, LLP

**COUNT V**

**UNJUST ENRICHMENT**

(Individually and on behalf of the Statewide Class)

155.    Plaintiff Cauller ("Plaintiff" for purposes of this Count) incorporates by reference each allegation as if fully set forth herein.

156.    Plaintiff brings this count individually and on behalf of all members of the South Carolina Class (the "Class," for purposes of this Count).

157.    Mazda has benefitted from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to Mazda's concealment of the Engine Defect, and Plaintiff and the other Class Members have overpaid for these vehicles.

158.    Mazda has received and retained unjust benefits from Plaintiff and other Class Members, and inequity has resulted.

159.    It is inequitable and unconscionable for Mazda to retain these benefits.

160.    Because Mazda concealed its fraud and deception, Plaintiff and other Class Members were not aware of the true facts concerning the Class Vehicles and did not benefit from Mazda's misconduct.

161.    Mazda knowingly accepted the unjust benefits of its wrongful conduct.

162.    As a result of Mazda's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class Members in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request relief against Mazda as set forth below:

1.    Certifying the proposed Statewide Class;

2.    Appointing Plaintiff as the Class representative and Interim Class Counsel as Class counsel;

BLOOD HURST & O' REARDON, LLP

00217192

3.    Ordering Defendant to pay actual and statutory damages (including punitive damages) and restitution to Plaintiff and the other Class Members, as allowable by law;

4.    Enjoining Defendant from continuing the unfair business practices alleged in this Complaint;

5.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

6.    Ordering Defendant to pay attorneys' fees and costs of suit;

7.    Awarding injunctive relief requiring Mazda to promptly and fully inform Class Members of the Engine Defect and its associated dangers and instructing such Class Members to cease driving their vehicles, and ordering Mazda to provide free loaner vehicles of comparable make, model, or value to the Class Vehicle each Class member owns or leases until an adequate remedy for the Engine Defect is installed in the Class Vehicles; and

8.    Granting such additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted,

Dated: August 16, 2024

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
PAULA R. BROWN (254142)
JENNIFER L. MACPHERSON (202021)

By:    *s/ Timothy G. Blood*
      TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com
jmacpherson@bholaw.com

BEASLEY, ALLEN, CROW,
  METHVIN. PORTIS & MILES. P.C.

BLOOD HURST & O' REARDON, LLP

00217192

W. DANIEL "DEE" MILES, III
  (*phv forthcoming*)
H. CLAY BARNETT, III (*phv forthcoming*)
J. MITCH WILLIAMS (*phv forthcoming*)
DYLAN T. MARTIN (*phv forthcoming*)
TRENT H. MANN (*phv forthcoming*)
272 Commerce Street
Montgomery, AL 36104
Tel: 334/269-2343
334/954-7555 (fax)
dee.miles@beasleyallen.com
clay.barnett@beasleyAllen.com
mitch.williams@beasleyallen.com
trent.mann@beasleyallen.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28